570 A.2d 532

COMMONWEALTH of Pennsylvania

v.

Carlie MITCHELL, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 20, 1989.

Filed Feb. 20, 1990.

Norris E. Gelman, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

Carlie Mitchell appeals *nunc pro tunc* from his conviction for murder in the first degree, arson, robbery, rape, criminal conspiracy, possessing an instrument of crime, and risking a catastrophe. He presents four arguments on appeal: (1) that the trial court improperly allowed impeachment by evidence of prior arrests without convictions; (2) that trial counsel was ineffective for failing to object to a charge on voluntariness of confessions; (3) that trial counsel was ineffective for failing to object to hearsay testimony; and (4) that trial counsel was ineffective for failing to object to the court's response to a jury inquiry. We find no error; accordingly, we affirm.

First, appellant argues that the trial court erred in allowing impeachment using evidence of prior arrests not resulting in a conviction. During cross-examination of the defendant's character witnesses, the prosecutor asked the witnesses if they knew of the appellant's previous arrest record. Appellant's trial counsel objected to the questioning, and the objection was overruled. At the time of trial, in June, 1981, this line of questioning was permissible; however, shortly thereafter, the rule was changed. *See Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981). We must therefore decide whether the rule in *Scott* may be applied retroactively to this case.

In *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983), our Supreme Court held that the rule in *Scott* is

applied retroactively "to cases where the issue in question is properly preserved at *all stages* of adjudication up to and including any direct appeal." *Id.*, 503 Pa. at 233, 469 A.2d at 148 (emphasis added). In the present case, trial counsel objected to the line of questioning, but did not preserve his objection through timely post-trial motions. *See, e.g., Commonwealth v. Vernon*, 324 Pa.Super. 395, 401, 471 A.2d 897, 900 (1984) (issues are preserved for appeal if raised at trial and in post-trial motions). For this reason, we cannot apply *Scott* retroactively to this case. Consequently, we affirm the decision of the trial court on this issue.[1]

█ Next, appellant argues that his trial counsel was ineffective for failing to object to the court's charge on confessions. Specifically, appellant claims that the trial court did not charge the jury that they should disregard the confession if they found it to be involuntary.

Appellant's argument is nothing more than a game of semantics. The trial court instructed the jury that, before they could consider the confession as evidence, they must find that the confession was voluntary. The court then explained in great depth what a voluntary confession is. When reviewing a charge, this Court must only decide whether the area of the law is adequately, accurately, and clearly presented to the jury. *Commonwealth v. Porter*, 300 Pa.Super. 260, 446 A.2d 605 (1982). Instructions must be considered as a whole; error cannot be based on isolated portions. *Commonwealth v. Kelly*, 319 Pa.Super. 204, 465 A.2d 1301 (1983). Using this standard, the trial court's charge was unquestionably adequate. Appellant's trial counsel was not ineffective for failing to object to the instruction.

1. We note that trial counsel was not ineffective for failing to preserve this issue, because *Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981), and *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983), had not been decided and published at the time of the post-trial motions. Counsel is not ineffective for failing to predict a change in the law. *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74 (1983).

■ Appellant also argues that trial counsel was ineffective for failing to object to hearsay testimony. At trial, Dr. Robert Catherman, the medical examiner, testified as to the manner and cause of the victim's death. Dr. Catherman's testimony was based on autopsy reports prepared by Dr. Kenneth Carpenter, who was unavailable for trial because he had moved to Germany. We find that the testimony was properly admitted; accordingly, trial counsel was not ineffective for failing to object to it.

■ Experts may offer testimony based on the reports of others. *Commonwealth v. Thomas*, 444 Pa. 436, 443, 282 A.2d 693, 698 (1971). In homicide cases, pathologists may base their opinions on facts from autopsy reports prepared by others. *Commonwealth v. Smith*, 480 Pa. 524, 391 A.2d 1009 (1978). The present case is distinguishable from *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974), cited by appellant. In *McCloud*, the Commonwealth read substantial portions of the autopsy report, including opinions and conclusions, into the record. The Commonwealth relied on the business records exception to the hearsay rule. In the present case, Dr. Catherman did not read any of Dr. Carpenter's opinions or conclusions. He read only the facts contained in the report,[2] and based his own opinion on those facts. Furthermore, in *McCloud*, the medical examiner who prepared the report was away temporarily attending a convention. The court emphasized the fact that the Commonwealth could have produced him. In the present case, the person who prepared the report moved out of the country, and was not available to testify.

■ Finally, appellant asserts that trial counsel was ineffective for failing to object to the trial court's answer to a question from the jury. The jury asked the trial court why they were not permitted to hear testimony from appellant's co-conspirator or the co-conspirator's statement. The trial

**2.** The facts upon which Dr. Catherman based his report were merely Dr. Carpenter's observations of the nature and location of various injuries and results of various tests. Dr. Catherman drew his own conclusions as to the cause of these facts.

court explained that the statement was inadmissible, and that neither side had chosen to call the co-conspirator as a witness. The trial court instructed the jury not to speculate on the matter, and not to consider it in their deliberations.[3] Appellant asserts that the trial court's comments permitted the jurors to believe that the co-conspirator was not called because his testimony would have harmed appellant.

This argument is frivolous. The court's response was no more damaging to appellant's case than it was to the Commonwealth's. Furthermore, the trial court specifically instructed the jury not to consider the matter in their deliberations. Accordingly, appellant's trial counsel was not ineffective for failing to object to the trial court's response.

Judgment of sentence affirmed.

CAVANAUGH, J., concurs in which CERCONE, J., joins.

CAVANAUGH, Judge, concurring:

I disagree with the reasoning employed in the majority's opinion with respect to the claim of trial counsel's ineffectiveness in failing to object to the admissibility of Dr. Catherman's expert testimony, which was based on a hearsay autopsy report not admitted into evidence.

3. The trial court's comments follow:
Ladies and Gentlemen, the statement of Mr. Gale under the law and for reasons which I need not go into except that under the law the statement of Mr. Gale could not be read to you.
Now, your question also asks why we are not allowed to hear Mr. Gale.
Now, I merely want to point out to you that Mr. Gale was available to both sides, to either side. Either side could have compelled Mr. Gale's attendance in this courtroom by the method of issuing a subpoena for Mr. Gale.
Now, I do not care to elaborate further on what I have just told you. I do suggest to you very strongly, however, that you concentrate on the evidence that was presented for your consideration and do not attempt to speculate or concern yourselves with any thoughts about why Mr. Gale's statement was not read to you or why Mr. Gale was not produced as a witness by either party.

No case cited by the majority or the Commonwealth sufficiently distinguishes this case from the Supreme Court's holding in *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974). *McCloud* rather clearly states that in a homicide prosecution, evidentiary use, as a business records exception to the hearsay rule, of an autopsy report in proving legal causation of the decedent's death is impermissible unless the accused is afforded the opportunity to confront and cross-examine the medical examiner who performed the autopsy, absent compelling necessity. *Id.* The medical examiner in this case was absent from the country, but the Commonwealth did not seek to admit other evidence from which a testifying expert could have drawn conclusions as to the cause of death.

It is true that Pennsylvania courts have in the past permitted experts to testify as to the cause of death based *in part* on hearsay which reviewing courts felt was either admitted or merely utilized by the expert under a medical records exception. *See, Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971). However, in these cases there was testimony by other witnesses as to critical facts on which the expert based his conclusions. For instance, the *Daniels* court was careful to point out that, with the exception of one report, all of the facts on which the expert based his opinion came from the expert's interviews with individuals who themselves testified to those facts during the case.

The *Thomas* case dealt with psychiatric expert testimony offered by the Commonwealth to refute a homicide defendant's claim of insanity. There the expert's conclusions were based on his own evaluation of the defendant and on psychological testing done by the court psychologist. The psychological tests were admitted into evidence and were used by defense experts as well as by the Commonwealth's witness. As in *Daniels*, the court cited the then-emerging rule which permits medical witnesses to express opinion testimony on medical matters based, *in part*, upon reports

of others which are not in evidence, but upon which the expert customarily relies in the practice of his profession. *Thomas, supra.*

*Commonwealth v. Smith,* 480 Pa. 524, 391 A.2d 1009 (1978), also cited by the majority, is likewise inapposite. In *Smith,* a pathologist testified to the ultimate cause of death based on an autopsy performed by an individual who was not a physician, but who did have experience performing autopsies. The individual who performed the autopsy did not render an opinion as to the cause of death, but he did testify and described the wounds and the path and location of the bullets in the victims' bodies. He also excised vital organs and turned them over to the medical doctor who was the Commonwealth's expert. The expert testified as to the cause of death based on his own examination of the vital organs combined with information received from the individual who performed the autopsy. In *Smith,* then, there was no underlying hearsay problem, since another witness testified to all of the facts on which the expert based his opinion.

The same is true of *Commonwealth v. Haddle,* 271 Pa.Super. 418, 413 A.2d 735 (1979), cited by the Commonwealth in its brief. Furthermore, in the *Haddle* case the records came in only to refute a theory advanced by the defense itself, not to prove an element of the Commonwealth's case against the defendant, as in the instant appeal.

Moreover, none of those cases, with the exception of *McCloud,* dealt directly with the Confrontation Clause issue which underlies appellant's claims.

In the context of this claim of ineffectiveness, however, I perceive that there was a reasonable basis for counsel's failure to object to Dr. Catherman's testimony. Autopsy photographs were available which graphically depicted the decedent's burned and mutilated body. Counsel may have wished to avoid the admission of these photographs as a foundation for Dr. Catherman's testimony. Thus, appellant

108

has failed to demonstrate that counsel was ineffective in not objecting to Dr. Catherman's testimony.

CERCONE, J., joins.